GREGORY et al. v. BIJOU THEATER CO.

(Supreme Court, Appellate Division, Third Department.  May 4, 1910.)

NEW TRIAL (§ 145*)—IMPEACHMENT OF VERDICT—AFFIDAVIT UPON INFORMA-
TION FROM JUROR.

As the misconduct of jurors in reading the judge's minute book and making its contents known to their colleagues could not be sworn to by a juror to impeach his verdict, it could not be shown for such purpose by an affidavit of a third person upon information from such juror.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 300, 301; Dec. Dig. § 145.*]

Kellogg and Sewell, JJ., dissenting.

Appeal from Trial Term, Ulster County.

Action by John H. Gregory and another against the Bijou Theater Company.  Judgment for plaintiffs, and from an order granting a new trial plaintiffs appeal.  Reversed, and motion denied.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Arthur C. Connelly (Howard Chipp, of counsel), for appellants.
William D. Brinnier, for respondent.

SMITH, P. J.  This action was tried before the court and a jury, and resulted in a verdict in favor of the plaintiffs.  A motion for a new trial was made under section 999 of the Code of Civil Procedure and was denied.  Thereafter judgment was entered.  After the entry of judgment the defendant made a motion to set aside the verdict upon the ground of misconduct of the jury, which motion was granted.  The affidavit upon which the motion was granted was made by the defendant's counsel.  It recites the trial, the verdict, and the motion for a new trial, its denial, and the judgment.  It then recited upon information from the county judge and belief that at the adjournment of the court upon that day the county judge left his minute book, in which he had taken some minutes of the trial, upon the bench in the courtroom.  It further recited upon information from one of the jurors that two of the jurors thereafter came into possession of that minute book and read it and made known its contents to his colleagues, who discussed the same.  This was the irregularity complained of.

If these facts were properly shown, the order would seem to have been justified.  Mitchell v. Carter, 14 Hun, 448.  The fact that the jurors at any time had access to these minutes or opportunity to read them, and the fact that they were so read, is shown only by an affidavit based upon information from one of the jurors.  That this cannot be so shown seems to have been held in Mais v. Ruh, 57 App. Div. 15, 67 N. Y. Supp. 1051.  It hardly seems necessary to cite authority to the proposition that facts which cannot be sworn to by a juror to impeach his verdict cannot be shown by a third person upon information from that juror.  Nor is it necessary to decide whether proof is necessary that the reading of these minutes influenced the minds of the jury.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Plaintiffs could have produced the affidavits of the jurors to negative these facts, but was not bound to do so until defendant had produced some legal evidence of the fact that the jury had access to these minutes and in fact read them.

For this reason we think the order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur, except KELLOGG, J., dissenting in opinion in which SEWELL, J., concurs.

JOHN M. KELLOGG, J. (dissenting). Mitchell v. Carter, 14 Hun, 448, shows that the facts alleged in the moving papers, if properly alleged, justify the order setting the verdict aside. The county judge who made the order presided at the trial. He knew the location of the jury room and the courtroom, and knew that the minute book was left in the courtroom. The opinion shows that he paid but little attention to the declarations of the jurors themselves, treating their evidence as practically incompetent; but in his opinion he states as a fact that his minutes were in the room in which the jury were deliberating. He probably knew that in the courthouse, during the recess of the court, the jury usually returned to the courtroom for deliberation rather than remain in the small jury room. He knew the circumstances of the trial, the officers in charge of the jury, the contents of his minute book, and all the surrounding circumstances. He apparently had knowledge that the jury were in the room where his minute book was, and upon the application, upon information and belief that the jury actually examined the book, he considered that it rested with the plaintiff to show that the irregularity was harmless. The jurors were competent witnesses to sustain the verdict and to show that nothing improper occurred. The absence of such evidence is significant.

The due administration of justice depends upon a verdict by an impartial jury, the verdict to rest upon the evidence of the case, and the mere suspicion of the presiding judge that other matters have intervened, and a refusal of the prevailing party to explain such matters when an opportunity is given, and he alone can explain them, go far to justify an order for a new trial. If this order had been made by a judge other than the one presiding at the trial, the situation would be much different. If the judge had known, or had reason to believe, that the verdict was the result of improper conduct of the jury, it was his right and duty to set aside the verdict and give to the parties a fair impartial trial. The application was made at the same term of court. The County Court is always open for business. For some defect in the moving papers the hearing of the motion did not apparently actually take place until after the jury had been discharged for the term. I think the matter should be treated in the same manner as if during the term a suggestion had been made to the county judge of an irregularity which he had investigated, and upon being convinced of its truth had set the verdict aside. It was a matter resting in the sound discretion of the court, and absolute proof is not required. In many cases before the court, where the question is raised that the court has been imposed upon, a fraud committed upon the court, or that the verdict is

the result of an irregularity, the necessity that judicial proceedings shall be beyond suspicion justifies the court in acting upon slight evidence, especially where the successful party alone has ample means to show the regularity of the proceeding.

I think upon the facts shown the discretion was properly exercised, and that the order should be affirmed.